IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID ANTHONY BLAES, (TDCJ-CID #590109) | § § § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION H-11-3744 |
| S. HARRINGTON, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

David Anthony Blaes, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in October 2011, alleging civil rights violations resulting from a denial of adequate medical care. Blaes, proceeding pro se and in forma pauperis, sues the following prison officials at the Pack I Unit: S. Harrington, practice manager; M. Avila, M.D., physician; C.S. Staples, Assistant Warden; R. Herrera, Senior Warden; and G. Crawford, nurse. He also sues the following officials at the Jester III Unit: K. Naik, physician in charge of the Brace and Limb Clinic; and J. Palacio, physical therapist.

The threshold issue is whether Blaes's claims should be dismissed as frivolous. The court concludes that Blaes's claims lack merit and should be dismissed for the reasons stated below.

### I.    Plaintiff's Allegations

Blaes states that he had brain surgery to remove a tumor in July 2009. He had thirty-three radiation treatments at the Sam Houston Cancer Center. While at the Polunski Unit, he was denied anti-seizure medication and fell repeatedly, breaking surgically inserted brackets. He underwent a second surgical procedure to repair damage to the broken brackets. Blaes states that he experiences

constant dizziness; blackouts; seizures; and cognitive problems. Blaes states that he falls repeatedly and occasionally loses consciousness upon striking his head on the concrete floor. Blaes states that the neuropathy in his neck and back are the result of repeated falls.

In April 2010, Dr. Bobby Thomas admonished Blaes to avoid falling because it could cause additional neurological damage. Dr. Thomas prescribed a helmet for Blaes. On June 23, 2010, Dr. Naik evaluated Blaes at the Brace and Limb Clinic and expressed her disbelief regarding Blaes's neurological condition. She accused Blaes of being a liar and a fake. Blaes alleges that Dr. Naik ignored the recommendations of the neurologists and denied the equipment they had prescribed. Blaes further claims that Dr. Naik has falsified medical records and enlisted the others to help deny Blaes proper medical care. Dr. Avila performed cursory examinations of Blaes and denied proper medical care. Wardens Herrera and Staples ignored Blaes's complaints. Wardens Herrera and Staples allowed Blaes to be transferred from A-wing to B-wing, thereby increasing Blaes's risk of falling.

In September 2010, Dr. Naik was responsible for having Blaes discharged from the physical rehabilitation program at the Jester III Unit even though Blaes had not regained the ability to walk. Because of Dr. Naik's inaccurate medical diagnosis, Blaes was transferred to the Huntsville Unit. Dr. Naik disregarded the medical judgment of specialists, Dr. Paulson and Dr. Thomas. Dr. Naik prevented Blaes from receiving a safety helmet from May 2010 to December 2011. Dr. Naik placed Blaes on a list of inmates who refuse to walk. Blaes asserts that Dr. Naik was "paranoid" about issuing a wheelchair in light of Inmate Arcade Comeaux's escape. Blaes explains that following Inmate Comeaux's escape, the criterion for issuance of a wheelchair have become more stringent.

On September 7, 2010, Palacios discontinued physical therapy and ordered Blaes to return to his cell without an assistive device. Palacios discounted the validity and seriousness of Blaes's

condition.

On October 5, 2010, Palacios noted that Blaes's falls took place when no one was there to document them. Palacios accused Blaes of purposefully falling.

In December 2010, while at the McConnell Unit, Blaes fell and sustained additional neurological damage.

In February 2011, Dr. B. Thomas, a neurology resident, recommended additional physical therapy and gait training. She noted that Blaes was unsteady with the walker; his unsteadiness was worrisome; fall precautions should be in place; and that he should have a wheelchair for any significant distance. She recommended an MRI of the brain; an MRI of the spine; and a referral to the otolaryngology department. Dr. Williams evaluated Blaes and prescribed a wheelchair and walker. On March 22, 2012, medical personnel evaluated Blaes and approved him for a wheelchair and walker.

Blaes fell several times between March 23, and March 29, 2012. Christie Crawford then provided a sub-standard wheelchair on March 29, 2012.

On February 27, 2012, Blaes underwent an electro myogram, or nerve conduction test, which revealed severe neuropathy.

Blaes states that he was prescribed medication for various aspects of his condition. Blaes complains that his injuries were rarely x-rayed; his vital signs were not recorded; examinations were cursory; adequate pain medications were withheld; ice packs were withheld; and follow-up examinations were rarely performed. Blaes was prescribed Ibuprofen, Motrin, Leviteracetam, and Phenytoin. Blaes was hospitalized for fourteen days following his initial surgery. At that time, he was prescribed steroids to reduce the swelling in his brain. He was prescribed physical therapy,

occupational therapy, and respiratory therapy. He received physical therapy for one month. He was assigned to the Estelle Unit for a period of four months. Each week he was transported to the Sam Houston Cancer Center for radiation treatments. He was hospitalized for ten days following the second surgery. He was hospitalized at the Estelle Unit as an inpatient for three months, where he received physical therapy. He was discharged as noncompliant for refusing an order that would have been dangerous to him. He also received physical therapy at the Jester III Unit for three months. He was discharged from the physical therapy program at the Jester III Unit because he was falling repeatedly.

Blaes complains that Dr. Thomas prescribed a wheelchair on February 9, 2011, but Blaes did not receive it until March 29, 2012. When asked to provide information concerning the treatment he received, Blaes responded that he was seen on numerous occasions, but cannot provide specific information.

Blaes seeks $50,000.00 in punitive damages from each defendant.

## II.     Standard of Review

A district court must sua sponte dismiss a prisoner's IFP § 1983 complaint if the action is malicious or frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). Under 28 U.S.C. § 1915(e)(2)(B)(i), the court may dismiss an *in forma pauperis* complaint as frivolous when it lacks an arguable basis in law or fact. *Hutchins v. McDaniels*, 512 F.3d 193, 195 (5th Cir. 2007) (citing *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998)). The court may dismiss the claim "'before service of process or before the filing of the answer' as long as certain safeguards are met." *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)). The Fifth Circuit reviews such dismissals

for abuse of discretion. *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001)(citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)(quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

### III. The Medical Care Claim

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999)(quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety". *Stewart,* 174 F.3d at 534 (citing *Estelle,* 429 U.S. at 104). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

In *Estelle,* the Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is

> manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104-05.

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998)(quoting *Farmer,* 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmer,* 511 U.S. at 842 & n.8).

Under the facts alleged by Blaes, this standard is not met. Blaes has not demonstrated that the medical care provided to him posed a substantial risk to his future health. By his own admissions, Blaes was hospitalized for fourteen days following his initial surgery. He was prescribed steroids to reduce the swelling in his brain. He was prescribed physical therapy, occupational therapy, and respiratory therapy soon after the surgery. He received additional physical therapy for one month. He was then assigned to the Estelle Unit for a period of four months, and

each week he was transported to the Sam Houston Cancer Center for radiation treatments. He was hospitalized for ten days following the second surgery. He was hospitalized at the Estelle Unit as an inpatient for three months. He also received physical therapy at the Jester III Unit for three months. Such evidence of examinations and treatment negate Blaes's claim of deliberate indifference. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).

Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838, 114 S. Ct. 1970. Therefore, Blaes's claims should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2).

Blaes also complains that medical personnel delayed providing him with a safety helmet and a wheelchair, though neurology specialists had recommended this equipment. Blaes complains that he should have been provided with this equipment, and that this would have helped him avoid repeated falls and additional neurological damage. Blaes's pleadings show that Dr. Naik evaluated Blaes and determined that the safety helmet and wheelchair were not medically necessary. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference

to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997).

To establish an Eighth Amendment claim for denial of medical care, the inmate must show deliberate indifference to "serious" medical needs, "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Constitutionally adequate care does not, however, ensure that an inmate will agree with every treatment decision. *Estelle,* 429 U.S. at 107-08.

In a related claim, Blaes alleges that medical personnel were deliberately indifferent when they delayed providing him with a safety helmet and a wheelchair. Blaes has not shown, however, that such delay constituted deliberate indifference. Blaes pleadings indicate that he was provided with a safety helmet in August 2011 and a wheelchair in March 2012. Blaes has not alleged facts demonstrating the defendants were aware of, and disregarded, a substantial risk of harm to Blaes. Nor did he suffer substantial harm as a result of the delay in providing medical equipment.

Blaes also complains that Dr. Naik discharged Blaes from the physical therapy program without justification. Blaes submitted a grievance on this matter, to which prison officials responded as follows:

> This grievance was reviewed by Ms. Dostal, Senior Practice Manager. After being assigned to the Jester 3 Infimary, you were evaluated by Dr. Naik on 9/7/10. She documents that you were originally housed at the Estelle Infimary and did not fully cooperate in therapy, and therefore never accomplished the goal of walking. After coming to Jester 3, you agreed to try physical therapy again and to participate fully. You began therapy on 9/10/10 and continued until 10/5/10. On 10/4/10 you were observed in your assigned cell walking without difficulty, and then when participating in physical therapy you were walking in a zig-zag manner. The assigned therapist felt this was a deliberate action on your part. Then on 1075/10 you reported falling in the gym, yet the therapist did not witness the fall. Your assigned therapist, Mr. Palacio, confronted you about the "staged fall" because

>you had not falled[sic] in the 3-4 weeks prior to this event. You were told that today was to be your discharged date from physical therapy. Subsequently when discharged from therapy you are also discharged from your Infirmary placement. Your discharge was processed through the Bureau of Classification and you are currently assigned to the McConnell Unit. Rehabilitation treatment was provided while at Jester 3. You must also be willing to work hard while in therapy. Grievance unsubstantiated.

(Docket Entry No. 30-3, p. 5).

To succeed on his claims of denial of medical care, Blaes must show (1) deliberate indifference (2) to a serious medical need. Accepting Blaes's claims as true, he had a serious medical need. The question is thus whether he has shown that the defendants were deliberately indifferent to that need. Medical records of examinations, diagnoses, and medications rebut Blaes's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Blaes admits that he was seen by medical personnel on several occasions.

Thus, Blaes's claim based on deliberate indifference to his serious medical needs is DISMISSED as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

## IV. Conclusion

The action filed by David Anthony Blaes (TDCJ-CID Inmate #590109) lacks an arguable basis in law. His claims are DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Any remaining pending motions are DENIED as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Blaes's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail

to:

    (1)    the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

    (2)    the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

    (3)    the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas, on May 22, 2013.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE